# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MENHART, Minors.

UNPUBLISHED
June 22, 2017

No. 335249
Wayne Circuit Court
Family Division
LC No. 14-516402-NA

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to the minor children, SM, AM, and FM, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care or custody for the children), MCL 712A.19b(3)(i) (parental rights to one or more siblings have been terminated due to serious and chronic neglect or physical or sexual abuse), and MCL 712A.19b(3)(j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm.

On appeal, respondent argues that the trial court clearly erred in finding that the statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j) were proven by clear and convincing evidence and that the court further erred in finding that termination was in the best interests of the children. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1) (rule pertains to termination proceedings).

We first note that respondent fails to challenge the trial court's ruling that there existed clear and convincing evidence in support of termination under MCL 712A.19b(3)(i). Given that only one statutory ground needs to be established, MCL 712A.19b(3), and that respondent fails to claim error with respect to § 19b(3)(i), respondent's general appellate argument regarding the statutory grounds for termination necessarily fails. Nevertheless, we shall examine the three remaining statutory grounds cited by the trial court.

MCL 712A.19b(3)(c)(*i*) provides that a court may terminate parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

We conclude that the trial court did not clearly err in finding clear and convincing evidence in support of termination under MCL 712A.19b(3)(c)(*i*). In the initial petition regarding SM, AM, and FM, petitioner asked the court to take jurisdiction over the three minor children due to the sexual assault of SM by respondent's male friend, which took place while the children were spending the night alone with the friend in his home. After Child Protective Services (CPS), a division of the Department of Health and Human Services, made respondent aware of the allegations regarding sexual abuse, respondent continued to allow her male friend to be alone with all three minor children. CPS received another referral alleging that FM had been physically abused by respondent's brother. The children disclosed to CPS that their uncle had gotten angry and threw a shoe at FM. The shoe made contact with FM's left leg and caused "an injury." A forensic interview also revealed that SM, AM, and FM had witnessed a domestic violence incident between respondent and her then-partner. During respondent's nine prior interactions with CPS between 2001 and 2014, she had been offered services, but "did not make herself available for services, did not comply or communicate with CPS, and then services were cancelled." As of April 2014, respondent lacked stable housing and a legal source of income, and all three children had "special dental needs" and were extremely behind academically.

As of September 2016, the conditions that led to adjudication continued to exist. Respondent's treatment plan required that she obtain safe and suitable housing and a legal source of income, that she complete parenting classes, individual therapy, and family therapy, and that she have no contact with the male friend who sexually abused SM. Respondent was allowed supervised visits with the children. Over two and one-half years passed between the filing of the original petition and the termination hearing. During that time, respondent failed to complete individual therapy and failed to take accountability for allowing the male friend to continue to be around SM, despite being aware of the sexual assault against SM. Respondent also never progressed far enough in individual therapy to be able to work towards completing family therapy with SM. Throughout the proceedings, there were multiple allegations that respondent continued to be in contact with the male friend or was having some type of relationship with him, despite being ordered to have no contact with him at all. Respondent failed to demonstrate that

she had safe and suitable housing for the children. Although respondent claimed that her father's home was safe and suitable, her father refused to allow petitioner to do the necessary background investigation to allow the children to visit or to be placed there. Respondent failed to obtain a source of legal income, save for one month prior to the termination hearing. Respondent did complete parenting classes; however, what she gleaned from those classes could not be ascertained as she missed roughly half of the visits with the children that were afforded to her. Respondent also refused to respond to text messages and telephone calls from her children. Based on the foregoing, it cannot be said that the trial court clearly erred by finding that petitioner had presented clear and convincing evidence to support the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

MCL 712A.19b(3)(g) provides that a court may terminate parental rights when the court finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." This Court has held that "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Respondent failed to comply with and/or benefit from her treatment plan. Additionally, as reflected above, there was evidence that respondent failed to procure safe and suitable housing for the minor children, that she could not support the children with a legal source of income, and that she failed to regularly visit with them despite the opportunity to do so. Moreover, there was the situation with the male friend who had sexually abused SM, which matter respondent failed to properly confront and address. Therefore, we cannot conclude that the trial court clearly erred by finding that petitioner had presented clear and convincing evidence to support the termination of respondent's parental rights pursuant to MCL 712A.19b(3)(g).

Finally, MCL 712A.19b(3)(j) provides that a court may terminate parental rights when the court finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." A parent's failure to comply with his or her service plan is evidence that the child may be harmed if returned to the parent's home. *White*, 303 Mich App at 710-711.

Again, after respondent had been made aware of the sexual assault allegations against the male friend, she continued to allow all three minor children to be left alone in his care. Throughout the pendency of these proceedings, respondent was ordered not to have any contact with the male friend. However, despite being cautioned by the trial court, allegations continued to surface that respondent was in communication with him. Further, respondent failed to comply with aspects of her treatment plan, nor did she benefit from any services. And respondent failed to show that she had safe and suitable housing for the minor children, nor did she complete individual therapy or progress to family therapy, so as to give her the skills and understanding necessary to protect the children. Therefore, we cannot conclude that the trial court clearly erred by finding that petitioner had presented clear and convincing evidence to support the termination of respondent's parental rights pursuant to MCL 712A.19b(3)(j).

With respect to the children's best interests, we place our focus on the child rather than the parent. *Moss*, 301 Mich App at 87. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

As discussed above, respondent failed to show that she had safe and suitable housing for the minor children, failed to show that she could support the children with a legal source of income, failed to regularly attend scheduled visitations, failed to respond to the children's text messages or to return their telephone calls, failed to complete individual therapy or to progress to family therapy, and failed to properly address and respond to the sexual abuse committed by her male friend. Comparatively, the minor children's placement with their paternal grandmother provided them with the stability and security that they did not have while in respondent's care. Specifically, the grandmother helped the children catch up academically and begin to thrive at school, taught them discipline, took care of their health, and even helped to remedy their lack of personal hygiene. By the time of the termination hearing, the children had been out of respondent's care for well over two years, and during that time they had limited and inconsistent contact with respondent. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of the minor children.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

-4-