# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SADVARI, Minors.

UNPUBLISHED
July 31, 2018

No. 339463
Kent Circuit Court
Family Division
LC Nos. 15-053899-NA;
15-053900-NA; 15-053901-NA

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (likelihood of harm if child returned to parent's care). We affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) submitted an initial petition for custody regarding the three minor children in December 2015. The petition alleged that respondent had attempted suicide in the family home while father and the children were present. The petition also alleged that respondent and father attempted to start a fire in the fireplace while they were intoxicated and caring for the children, and they failed to open the fireplace flue, causing smoke to fill the home. Additionally, the petition alleged that in December 2015, while respondent and father were in a vehicle with the three children, father punched respondent twice in the face and fled the scene, with respondent subsequently being arrested for drunk driving and child endangerment. Respondent and father admitted the allegations in the petition during the adjudicative phase.

Initially, respondent and father received a treatment plan, and reunification was the goal. The children were first placed in a nonrelative foster home, but they were eventually placed with the paternal grandmother for the pendency of the proceedings. The trial court held permanency planning hearings every three months, and in February 2017, approximately 14 months after the initial petition was filed, the DHHS filed a termination petition on the trial court's order. On June 14, 2017, the trial court held a termination hearing. At the close of the hearing, the trial court concluded that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the best interests of each child.

-1-

On appeal, respondent argues that the trial court clearly erred in finding that statutory grounds existed to terminate her parental rights and that the trial court clearly erred in finding that termination of her parental rights was in the children's best interests. We disagree.

## II. STANDARD OF REVIEW

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

## III. ANALYSIS

Respondent first argues that the trial court erroneously based its decision under MCL 712A.19b(3)(c)(*i*) on the fact that respondent (1) continued to engage in substance abuse, (2) exhibited noncompliance with the case service plan, and (3) had somewhat unsettled housing issues. Respondent primarily focuses on the substance abuse issue, arguing that she merely failed to appear for most of the scheduled drug tests and that the trial court erroneously concluded that her missed drug screens were the equivalent of testing positive. Contrary to respondent's argument, the trial court did not base its decision relative to MCL 712A.19b(3)(c)(*i*) on a finding that respondent abused illegal substances. With regard to respondent, the conditions that led to adjudication involved the use of alcohol and prescription medications in combination with her mental health diagnoses. These conditions led to respondent's suicide attempts and her inability to properly care for the children. The record clearly indicated that the drug tests referenced by respondent only screened for use of illegal drugs but did not screen for use of alcohol or prescription medications. Therefore, the test results from the randomized drug screening program did not bear on whether respondent continued to use alcohol, whether she was properly taking her prescription medications for her mental health conditions, or whether she was improperly taking father's prescription pain medications. Although the trial court found that father tested positive for cocaine four times during the pendency of the case and that father had a very serious drug addiction, the trial court did not base its decision terminating respondent's parental rights on a finding that she was abusing illegal

drugs.[1]  Rather, the trial court found that respondent had a "serious alcohol problem" and found that her emotional stability was "fragile," as shown by her multiple suicide attempts during the pendency of the case.  The trial court also found that respondent had made no progress during the pendency of the case because she did not meaningfully participate in the numerous services offered to her by the agency.

We cannot conclude that the trial court committed clear error in finding that the conditions that led to the adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.  MCL 712A.19b(3)(c)(*i*).  The children were brought under the trial court's jurisdiction because there were several instances when respondent and father were found to be drunk and unable to properly care for the children.  Despite the many services offered to her, respondent continued to abuse alcohol throughout the pendency of this case.  In January 2017, after the children had been in care for two years, respondent again experienced a relapse in which she became intoxicated and threatened to commit suicide.  This incident was her third suicide attempt during the pendency of this case.  Despite the fact that the agency offered respondent assistance with mental health counseling, substance abuse counseling, and domestic violence counseling, she only chose to attend about half of the sessions offered to her.  There was simply no indication in the record that respondent would overcome the conditions that led to the adjudication within a reasonable period of time, considering the children's ages.  Respondent's claim that she was making progress is belied by the record.  The trial court did not commit clear error in finding that MCL 712A.19b(3)(c)(*i*) was proven by clear and convincing evidence.  Moreover, the evidence discussed above also supported the trial court's findings that MCL 712A.19b(3)(g) and (j) were proven by clear and convincing evidence.

Respondent next argues that the trial court erroneously found that termination of her parental rights was in the children's best interests.  We disagree.

With respect to a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home."  *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).  "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption."  *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In finding that termination of respondent's parental rights was in the children's best interests, the trial court considered multiple factors.  The trial court found that the following factors weighed against termination of respondent's parental rights: (1) her bond with the children; (2) the lack of evidence of continued instances of domestic violence; and (3) the

---

[1] To be clear, we are not concluding that there is anything improper or unconstitutional about treating missed drug screens as positive screens.

absence of evidence that she was involved in questionable relationships with other individuals. The trial court found that the following factors weighed in favor of termination of respondent's parental rights: (1) the unsuitability of guardianship for the children on the facts of this case; (2) respondent's lengthy history of struggling with emotional stability; (3) the children's need for permanence and stability given their young age; (4) respondent's poor history of attending parenting time; (5) respondent's "utter non-compliance" with her treatment plan; (6) the positive potential for adoption given the children's ages; and (7) the children's need for permanence and stability. Finally, the trial court found that the children's well-being while placed in foster care with their paternal grandmother was a neutral factor.

Respondent argues that the trial court failed to give sufficient weight to the bond between her and the three minor children, that she had more than adequate parenting skills, and that respondent was making continued progress in other areas for the purpose of being reunited with her children. Contrary to respondent's arguments, the trial court specifically found that her bond with the children weighed against termination of her parental rights. Yet, weighing other factors, the trial court found by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests. The trial court cited respondent's "utter non-compliance" with her treatment plan, her poor history of attending parenting time, and her lengthy history of struggling with emotional stability, as some of the factors that weighed in favor of termination. After a review of the entire record in this case, we cannot conclude that the trial court clearly erred in finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Respondent also argues that the trial court failed to properly consider the potential of placing the children with the foster grandparent, with the goal of eventually reunifying respondent with the children. She contends that the trial court never explicitly addressed whether termination was appropriate in light of the children's placement with relatives so that reunification would be better facilitated. We disagree. In *Olive/Metts*, 297 Mich App at 43, this Court observed:

> [B]ecause a child's placement with relatives weighs against termination . . ., the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [Citations and quotation marks omitted.]

Here, the trial court considered the children's ages in the context of their need for permanence and stability. Furthermore, the trial court in this case *did* consider the children's placement with their foster grandparent when examining whether termination was in the children's best interests. In weighing that factor, the trial court aptly noted several problems and concerns regarding the propriety of the grandmother's home. Primarily, the trial court noted the

testimony of the case worker and other DHHS staff that the grandmother's request for guardianship was a ruse to circumvent termination of respondent's parental rights. Throughout the pendency of this case, father demonstrated that he had unresolved substance abuse and mental health issues. Yet, the grandmother denied that father had any problems, and she consistently blamed respondent for the commencement of the child protective proceedings. The grandmother's refusal to acknowledge father's lack of fitness to parent the children and her focus on returning the children to their father's care supported the trial court's determination that placement of the children with her did not weigh against termination of respondent's parental rights.

We conclude that the trial court did not err when it found that, at most, the relative placement was a neutral factor given the concern of continued placement with the grandmother. There was sufficient evidence presented by DHHS witnesses to establish that the grandmother was unfit to serve as a guardian of the children. This included testimony that the grandmother refused to cooperate with CPS during an investigation into whether one of the children suffered injuries while in her care.

The trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of all three children. We therefore affirm the trial court's order terminating her parental rights.

Affirmed.


/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey